

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMONE REDD,<br><br>Plaintiff,<br><br>v.<br><br>J. DOUGHERTY, ADAM WEBER,<br>ROSEMARIE NOLAN, UNKNOWN AND<br>UNNAMED COOK COUNTY DEPARTMENT<br>OF CORRECTIONS EMPLOYEES,<br>COOK COUNTY SHERIFF THOMAS DART,<br>individually, CITY OF CHICAGO, and<br>COOK COUNTY, ILLINOIS,<br><br>Defendants. | No. 08 C 343<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Samone Redd ("Plaintiff") filed this action against Chicago Police Detective J. Dougherty ("Detective Dougherty"), Assistant State's Attorney Adam Weber ("ASA Weber"), Cook County's Director of Personnel Rosemarie Nolan ("Nolan"), Cook County Sheriff Thomas Dart ("Sheriff Dart"), unknown and unnamed County employees ("unknown defendants"), the City of Chicago ("the City"), and Cook County, Illinois ("the County") after she was discharged from her position as a correctional officer with the Cook County Department of Corrections ("DOC").[1] She raises claims under 42 U.S.C. § 1983 for alleged deprivations of her constitutional rights and related claims under state law. (R. 1, Compl.) Pending before the Court are three separate motions to dismiss filed by the defendants. (R. 17, 23, 26.) For the reasons stated below, the

---

[1] Plaintiff misspelled Detective Dougherty's name "Daugherty" in the Complaint. (*See* R. 1, Compl.)

motions are granted in part and denied in part.

## RELEVANT FACTS

In February 2007, following the completion of her training at the Cook County Sheriff's Institute for Law Enforcement Education and Training, Plaintiff began working as a correctional officer at the DOC for a probationary period to end on November 13, 2007. (R. 1, Compl. ¶ 11.) During this period, Plaintiff worked the night shift, which began at 11:00 p.m. and ended at 7:00 a.m. (*Id.* ¶ 14.)

On May 29, 2007, around 11:00 p.m., Plaintiff witnessed a man and a woman arguing outside of a residence near 92nd Street and Lawrence Avenue in Chicago.[2] (*Id.* ¶ 15.) Two days later, Plaintiff met with Detective Dougherty and gave a statement about what she had witnessed. (*Id.* ¶ 16.) Plaintiff informed Detective Dougherty that she did not witness a battery during the altercation. (*Id.* ¶¶ 16-17.) She did not sign any written statement at this time. (*Id.* ¶ 17.)

Throughout the following weeks, Plaintiff claims that she received repeated calls "of an intimidating and harassing nature" from Detective Dougherty. (*Id.* ¶ 18.) On July 5, 2007, at 3:00 a.m., Detective Dougherty called Plaintiff and "demand[ed]" that Plaintiff "immediately" give a second statement. (*Id.* ¶¶ 19-20.) Plaintiff told Detective Dougherty that she was unable to do so at that time, but he continued to demand that she provide a second statement and that she "cooperate" with the police. (*Id.* ¶ 21.) Later that morning, Detective Dougherty "arrived at Plaintiff's door" and served her with a subpoena to testify before a grand jury on July 6 and 9, 2007. (*Id.* ¶ 22.)

---

[2] The Complaint does not state whether Plaintiff had begun her shift at the DOC at the time she witnessed the altercation, nor does it indicate what she was doing outside this residence when the altercation occurred. (*See* R. 1, Compl.)

2

At 1:45 a.m. on July 6, 2007, Detective Dougherty called Plaintiff during her "lunch break" to tell her that he and ASA Weber were coming over to obtain another statement from her. (*Id.* ¶ 23.) When they arrived, however, DOC officers would not allow them to enter the building. (*Id.* ¶ 24.) Plaintiff alleges that she was in no way involved in their inability to gain access to the building. (*Id.*)

At 9:00 a.m. that morning, Plaintiff appeared to testify before the grand jury. (*Id.* ¶ 25.) Plaintiff alleges that after she arrived, ASA Weber attempted to coerce her into changing her original statement to Detective Dougherty. (*Id.* ¶ 25.) ASA Weber allegedly "intimidated" Plaintiff and accused her of lying about what she saw. (*Id.*) Plaintiff alleges that she refused to "perjure herself" by changing her statement, and ASA Weber did not call her as a witness in the July 6 proceeding. (*Id.*)

On July 9, 2007, Plaintiff again arrived at 9:00 a.m. for the grand jury proceedings. (*Id.* ¶ 26.) ASA Weber allegedly repeated his behavior from a few days earlier by "harass[ing]" Plaintiff and falsely accusing her of lying. (*Id.*) Again, Plaintiff refused to change her statement. (*Id.*) She was not called to testify before the grand jury. (*Id.* ¶¶ 25-27.)

ASA Weber thereafter filed a complaint against Plaintiff with the Cook County Sheriff's Department for "failing to cooperate in an ongoing criminal investigation" and for "providing the State's Attorney with false statements in said investigation." (*Id.* ¶ 27.) On October 31, 2007, Nolan discharged Plaintiff based on the complaint filed by ASA Weber. (*Id.* ¶ 28.)

## PROCEDURAL HISTORY

On January 15, 2008, Plaintiff filed an eight-count Complaint seeking relief under 42 U.S.C. § 1983 and Illinois state law. (R. 1, Compl.) She raises the following federal claims: in

Count I, a claim against Nolan and unknown defendants[3] for violations of her procedural due process rights; in Count II, a claim against Nolan and unknown defendants for violations of her substantive due process rights; in Count III, a First Amendment retaliation claim against Nolan and unknown defendants; and in Count IV, claims against Detective Dougherty, ASA Weber, and unknown defendants for unspecified violations of her "First, Fourth, Sixth, and/or Fourteenth Amendment" rights. (*Id.* ¶¶ 1-47.) Plaintiff also raises the following state law claims: in Count V, a retaliatory discharge claim against Nolan, Sheriff Dart, and unknown defendants; in Count VI, a tortious intentional interference with a business relationship claim against ASA Weber, Detective Dougherty, and unknown defendants; in Count VII, an intentional infliction of emotional distress claim against all the defendants; and in Count VIII, an indemnification claim against the County. (*Id.* ¶¶ 48-62.)

The defendants have filed motions to dismiss. ASA Weber moves to dismiss Counts IV, VI, and VII pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). (R. 17, ASA Weber's Mot. to Dismiss at 1.) The City and Detective Dougherty (collectively "City Defendants") jointly move to dismiss Counts IV, VI, and VII under Rule 12(b)(6). (R. 23, City Defs.' Mot. to Dismiss at 2.) The County, Nolan and Sheriff Dart (collectively "County Defendants") jointly move to dismiss Counts II, III, V, and VII under Rule 12(b)(6). (R. 26, County Defs.' Mot. to Dismiss at 1-2.)

---

[3] The unknown defendants are defined as: "Unknown and Unnamed Cook County Correctional Employees [who] were employed by the Cook County Sheriff's Department, and were acting under color of state law and as the employees, agents, or representatives of the Cook County Sheriff's Department." (R. 1, Compl. ¶ 8.)

4

## LEGAL STANDARD

In determining whether to grant a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a motion to dismiss, the complaint must overcome "two easy-to-clear hurdles:" (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

## ANALYSIS

As an initial matter, Plaintiff is suing a number of unknown defendants. (*See* R. 1, Compl.) Although there is no prohibition on filing suit against unknown defendants, "John Doe defendants must be identified and served within 120 days of the commencement of the action against them." *Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995); *see also* Fed. R. Civ. P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant . . . .") More than 120 days have passed since the filing of Plaintiff's complaint, and the unknown defendants have not been identified or served. Accordingly, these defendants are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). *See Harrell v. Bower Motors, Inc.*, No. 02-8252, 2004 WL 1745758, at *2 (N.D. Ill. Jul. 30, 2004); *Aviles*, 160 F.R.D. at 567. With this issue resolved, the Court turns to the claims against the named defendants.

5

## I.    Section 1983 Claims

### A. Count II

Count II alleges that Nolan violated Plaintiff's substantive due process rights when she "arbitrarily and capriciously" discharged Plaintiff without cause, thereby depriving her of her constitutionally protected property interest in her employment with the DOC. (R. 1, Compl. ¶¶ 37-39.) The County Defendants argue that Plaintiff fails to satisfy the high standard for alleging a substantive due process violation.[4] (R. 27, County Defs.' Mem. in Supp. of Mot. to Dismiss ("County Defs.' Mem.") at 3-4.) The County Defendants further argue that Count II is in actuality a First Amendment claim, and that under *Albright v. Oliver*, 510 U.S. 266 (1994), this claim cannot be brought as a substantive due process claim. (*Id.* at 4-5.)

Substantive due process protects persons from deprivations of life, liberty or property by arbitrary or irrational state action. *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008). For purposes of a substantive due process claim, "property interests are created and defined by an independent source, such as a contract or state law." *Id.* Once it is established that the plaintiff has a property right, "the due process clause of the Fourteenth Amendment circumscribes, but does not eliminate, the government's ability to deprive him of that interest." *Id.* "[S]ubstantive due process is not a blanket protection against unjustifiable interferences with property." *Id.* (citation omitted). Rather, substantive due process provides "a modest limitation that prohibits government action only when it is random and irrational." *Id.*

---

[4] The County Defendants' argument that Plaintiff's claim should be dismissed because she failed to allege the exhaustion of state remedies is a non-starter, since it is not necessary to exhaust state remedies before bringing a Section 1983 claim in federal court. *Patsy v. Board of Regents*, 457 U.S. 496, 501 (1982); *Cushing v. City of Chicago*, 3 F.3d 1156, 1163 (7th Cir. 1993).

Unless a governmental practice encroaches on a fundamental right, "substantive due process requires only that the practice be rationally related to a legitimate governmental interest." *Id.* Furthermore, a plaintiff basing a substantive due process claim on the deprivation of property, as opposed to life or liberty, must allege "either an independent constitutional violation or the inadequacy of state remedies to redress the deprivation before a court will consider whether the interference is arbitrary or irrational." *Id.* at 1001.

Here, Plaintiff claims that she was deprived of her property interest in her employment with the DOC.[5] (R. 1, Compl. ¶ 38.) Because her claim involves a property interest, Plaintiff must also allege the inadequacy of state remedies or a separate constitutional violation. *Gen. Auto Serv. Station*, 526 F.3d at 1001. Plaintiff concedes that she has not alleged the inadequacy of state remedies, but argues that she has alleged an independent violation of her First Amendment rights. (R. 31, Pl.'s Resp. at 5 n. 2.) Plaintiff is correct that she has alleged a First Amendment violation, but there is a separate problem with her allegations under the Supreme Court's decision in *Albright*. In *Albright*, the Supreme Court rejected the plaintiff's attempt to shoehorn what was in essence a Fourth Amendment claim into the concept of substantive due

---

[5] The Court notes that in the Complaint Plaintiff acknowledges that she was a "probationary employee" at the time she was fired (R. 1, Compl. ¶ 13), raising a question about whether she had a protectible property interest in her continued employment. *See Farmer v. Lane*, 864 F.2d 473, 479-80 (7th Cir. 1988) (probationary employee did not have protectible property interest in continued employment where he could be terminated without cause during probationary period). However, Plaintiff also specifically alleges that she could only be fired for cause. (R. 1, Compl. ¶ 13.). The defendants do not dispute this allegation, nor do they point the Court to any state law or County ordinance indicating that probationary correctional officers at the DOC can be discharged without cause. At this stage, the Court must accept Plaintiff's factual allegations as true and construe all reasonable inferences arising therefrom in her favor. *Killingsworth*, 507 F.3d at 618.

process. *Albright*, 510 U.S. at 273-75. The Court held, "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Id.* at 273.

Here, it is apparent here that Plaintiff's claim falls under the First Amendment, as she alleges that she was fired in retaliation for her refusal to perjure herself by changing her statement about the altercation that she witnessed. (*See* R. 1, Compl. ¶¶ 1-32.) The Seventh Circuit has made clear that, under *Albright*, a claim invoking protections against government interference with free speech must be analyzed under the First Amendment, rather than more general substantive due process principles. *Koutnik v. Brown*, 456 F.3d 777, 781 (7th Cir. 2006). Accordingly, Plaintiff cannot raise a substantive due process claim based on these allegations.

Even assuming Plaintiff's substantive due process claim is not barred by *Albright*, she has failed to allege the type of egregious government conduct necessary to support a substantive due process claim. To violate substantive due process, a defendant's conduct must "shock the conscience" and be "unjustifiable by any governmental interest." *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002). "[O]nly the most egregious official conduct is arbitrary in the constitutional sense." *Id.* Here, Plaintiff alleges that she was fired from her position as a correctional officer after the State's Attorney's Office filed a formal complaint against her for making false statements and failing to cooperate in a criminal investigation. There is no indication from the Complaint that Plaintiff's superiors were involved in the alleged misconduct of Detective Dougherty or ASA Weber, or that they had any reason to doubt the veracity of the State's Attorney's complaint. Terminating a correctional officer on the basis of a

8

formal complaint that the officer made false statements and failed to cooperate in a criminal investigation is not the type of "egregious official conduct" prohibited by substantive due process. *See Remer*, 286 F.3d at 1013. For these reasons, Count II is dismissed with prejudice.

## B. Count III

In Count III, Plaintiff alleges that Nolan violated her First Amendment rights by firing her in retaliation for her "refusal to perjure herself." (R. 1, Compl. ¶ 42.) The County Defendants argue that this claim should be dismissed because Plaintiff's allegations do not satisfy the *Connick-Pickering* test, used to determine whether a public employee's speech is protected under the First Amendment. (R. 27, County Defs.' Mem. at 5-6.)

The First Amendment protects a public employee's right to speak as a citizen about matters of public concern. *Sigsworth v. City of Aurora*, 487 F.3d 506, 509 (7th Cir. 2007). An employer may not retaliate against an employee for engaging in protected speech. *Id.* Conversely, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Courts employ the *Connick-Pickering* test to determine whether the employee's speech is constitutionally protected. *Sigsworth*, 487 F.3d at 509. Under the *Connick-Pickering* test, a public employee must demonstrate that: (1) she spoke as a private citizen on a matter of public concern; and (2) the interest of the employee as a citizen speaking on such a matter outweighs the interest of the state as an employer in promoting the efficiency of the public service it performs through its employees. *Id.*

Here, the Court concludes that Plaintiff has alleged enough to survive a motion to dismiss

9

on the issue of whether she was speaking as a private citizen. Specifically, Plaintiff alleges that she witnessed an altercation outside of a private residence, gave a statement to police about what she saw, and was thereafter pressured by police to change her statement. (R. 1, Compl. ¶¶ 11-32.) The Complaint is somewhat lacking in detail, and Plaintiff does not explain exactly where she was or what she was doing when she witnessed the altercation, but based on what has been alleged there is no apparent connection between Plaintiff's actions and her official duties as a correctional officer with the DOC.[6] At this stage, the Court must draw all reasonable inferences in Plaintiff's favor, and in doing so, the Court concludes that she has adequately alleged that she was speaking in her capacity as a private citizen.

Having determined that Plaintiff spoke as a private citizen, the Court turns to whether she spoke on a matter of public concern. Speech is directed at a matter of public concern if it relates to any matter of "political, social, or other concern to the community." *Wainscott v. Henry*, 315 F.3d 844, 849 (7th Cir. 2003). By contrast, a matter is not of public concern if it involves "a personal grievance of interest only to the employee." *Id.*; *see also Gustafason v. Jones*, 117 F.3d 1015, 1019 (7th Cir. 1997) (speech pertaining to "merely personal matters" does not constitute a public concern). Speech that relates to police protection and public safety is generally considered to be addressing public concerns. *Gustafson*, 117 F.3d at 1019; *Auriemma v. Rice*, 910 F.2d

_____

[6] The Court notes that the Complaint alleges that Plaintiff's shift began at 11:00 p.m. and ended at 7:00 a.m., and that the altercation she witnessed occurred "at approximately 11:00 p.m." (R. 1, Compl. ¶¶ 14-15.) The Complaint does not indicate whether Plaintiff was on duty at the time she witnessed the altercation. (*See id.*) However, there are facts from which it can be inferred that Plaintiff was not on duty during the incident, most notably that the altercation occurred outside of a private residence. At this stage, the Court must draw all reasonable inferences from the Complaint in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

10

1449, 1460 (7th Cir. 1990) (*en banc*). Here, Plaintiff's speech did not address a personal matter, but instead pertained to her statements to police about a crime that she witnessed. These statements addressed a matter of public concern, and therefore, the Complaint alleges sufficient facts to satisfy the first prong of the *Connick-Pickering* test.

To the extent the County Defendants are arguing that Plaintiff's claim fails under the second prong of the *Connick-Pickering* test, the Seventh Circuit has advised that such an issue should not be decided at the pleading stage: "[W]e think it preferable to leave to the defendant the burden of raising justification as an affirmative defense." *Gustafson*, 117 F.3d at 1019. The reason for this rule is that application of the balancing test required under the second prong usually will be possible "only after the parties have had an opportunity to conduct some discovery." *Id.*; *see also Glass v. Dachel*, 2 F.3d 733, 744 (7th Cir. 1993) (balancing test conducted at summary judgment stage). The Court finds that to be the case here. For these reasons, the motion to dismiss Count III is denied.

### D. Count IV

In Count IV, Plaintiff alleges that Detective Dougherty and ASA Weber "engaged in behavior which intimidated and coerced Plaintiff in violation of her First, Fourth, Sixth, and/or Fourteenth Amendment rights." (R. 1, Compl. ¶ 46.) In separate motions to dismiss, Detective Dougherty and ASA Weber argue that Plaintiff has not alleged any constitutional injury with respect to this claim. (R. 18, ASA Weber's Mem. in Supp. of Mot. to Dismiss ("ASA Weber's Mem.") at 3; R. 23, City Defs.' Mot. to Dismiss[7] at 5-7.)

---

[7] The City Defendants did not file a separate memorandum of law in support of their motion, and instead included all of their legal arguments within the motion to dismiss itself. (*See* R. 23, City Defs.' Mot. to Dismiss.)

Because Section 1983 is not an independent source of federal rights, the Court must first identify the specific constitutional rights infringed and apply the standards applicable to that particular constitutional provision. *Albright*, 510 U.S. at 271; *Whitehouse v. Piazza*, 397 F. Supp. 2d 935, 938 (N.D. Ill. 2005). Here, Plaintiff alleges that her Fourth and Sixth Amendment rights were violated, but the Complaint does not contain any facts pointing to such violations. For instance, Plaintiff does not allege that she was arrested, charged with a crime, or that she was subjected to a search or seizure, and she therefore has failed to state a claim for any violation of her Sixth or Fourth Amendment rights.[8] Nor can the Court discern any violation of Plaintiff's First Amendment rights by these defendants. Plaintiff appears to concede as much in her response, focusing instead on her Fourteenth Amendment claims against these defendants. (*See* R. 31, Pl.'s Resp. at 8-11.) In short, Count IV contains no cognizable First, Fourth, or Sixth Amendment claims.

As to her Fourteenth Amendment claims against Detective Dougherty and ASA Weber, Plaintiff argues that she has adequately stated a claim for violation of her substantive due process right to be free from coercive police questioning. (R. 31, Pl.'s Resp. at 8-10.) Plaintiff relies on *Buckley v. Fitzsimmons*, 20 F.3d 789, 794 (1994), but that case is factually distinguishable, because there the plaintiff had been a criminal defendant, and the police used coercive questioning to obtain statements from other witnesses inculpating him in a crime. Plaintiff's reliance on *Chavez v. Martinez*, 538 U.S. 760, 779 (2003), is similarly misplaced, as the plaintiff

---

[8] The Fourth Amendment guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Sixth Amendment guarantees criminal defendants, among other things, the right to a speedy trial, to counsel, and to confront the witnesses against them. U.S. Const. amend. VI.

in that case was a suspect who was coerced by police into making self-incriminating statements while he was receiving medical treatment for multiple gun shot wounds. The Supreme Court in *Chavez* did not rule on the merits of the plaintiff's claim, but instead remanded for consideration of "[w]hether [plaintiff] may pursue a claim of liability for a substantive due process violation." *Chavez*, 538 U.S. at 779-80. On remand, the Ninth Circuit held that the "freedom from coercive police investigation" is a "clearly established right," but all of the supporting cases cited involved questioning of criminal defendants. *See Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (*citing Darwin v. Connecticut*, 391 U.S. 346 (1968); *Beecher v. Alabama*, 389 U.S. 35 (1967); *Reck v. Pate,* 367 U.S. 433 (1961); *Leyra v. Denno*, 347 U.S. 556 (1954); *Malinski v. New York*, 324 U.S. 401 (1945).) A Seventh Circuit case following *Chavez* permitted a substantive due process claim based on coercive questioning to proceed to trial, but that case also involved questioning of a criminal suspect who made incriminating statements as a result of alleged coercive police questioning. *See Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006).

Here, Plaintiff was never a criminal defendant or a suspect, and the police did not coerce her into making self-incriminating statements. Plaintiff has not cited, nor has the Court's research revealed, any cases recognizing the viability of a coercive-questioning claim under the circumstances present here. Even assuming such a right would be recognized in this circumstance, which the Court finds doubtful, Plaintiff has not alleged that she was *coerced* into doing anything. Instead, she alleges throughout the Complaint that despite the pressure allegedly exerted by Detective Dougherty and ASA Weber, she refused to "perjure herself" and change her statement. (R. 1, Compl. ¶¶ 25, 26, 42, 49.) For these reasons, the Court concludes that Plaintiff

13

has not alleged a cognizable injury in the form of a violation of her Fourteenth Amendment rights. Accordingly, Count IV is dismissed with prejudice.

Because Plaintiff's claims fail on this ground, the Court need not reach ASA Weber's prosecutorial immunity argument or the Defendants' arguments that Plaintiff's allegations of misconduct do not "shock the conscience." (*See* R. 39, City Defs.' Reply at 3-5; R. 18, ASA Weber's Mem. at 4-8.)

## II. State Law Claims

### A. Count V

In Count V, Plaintiff alleges that Nolan and Sheriff Dart discharged her in retaliation for her refusal to "commit perjury," and that this discharge violated Illinois public policy. (R. 1, Compl. ¶ 49.) Both Nolan and Sheriff Dart argue that Plaintiff has improperly named them as defendants in this claim. (R. 27, County Defs.' Mem. at 7-8.) To state a claim for retaliatory discharge under Illinois law, the plaintiff must allege: (1) that she has been discharged; (2) in retaliation for her activities; and (3) the discharge violates a clear mandate of public policy. *Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1140 (Ill. App. Ct. 2000). Further, the plaintiff must name her former employer, and only her former employer, as the defendant in a retaliatory discharge claim. *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 570 (Ill. 1998). Agents or employees who carry out the employer's decision to discharge are not subject to liability. *Id.* Thus, Nolan, an agent of Plaintiff's employer, is not a proper defendant in this claim; indeed, Plaintiff concedes that she erroneously named Nolan in the retaliatory discharge claim. (R. 31, Pl.'s Resp. at 13 n. 4.) Accordingly, Count V is dismissed with prejudice as to Nolan.

14

Sheriff Dart, who is the official in charge of the DOC, would be the proper defendant in this claim, but for unknown reasons Plaintiff chose to sue Sheriff Dart in his individual capacity rather than in his official capacity as Plaintiff's employer. (R. 1, Compl. at 1.) In her response, Plaintiff insists that she is suing Sheriff Dart in his official capacity, citing to Paragraph 10 of her Complaint, but nowhere in this Paragraph does Plaintiff assert that she is suing Sheriff Dart in his official capacity.[9] (R. 31, Pl.'s Resp. at 13; R. 1, Compl. ¶ 10.) Moreover, in the caption of the Complaint, Plaintiff lists Sheriff Dart as "Sheriff Thomas Dart, individually." (R. 1, Compl. at 1.) It is apparent, however, that this error could be remedied with a minor amendment to the Complaint, and therefore the Court will dismiss Count V without prejudice as to Sheriff Dart.

**B. Count VI**

In Count VI, Plaintiff alleges a state law claim against ASA Weber, Detective Dougherty, and the City for tortious interference with a business relationship. (R. 1, Compl. ¶ 52.) The City Defendants argue that Plaintiff has pled insufficient facts to support a claim for this tort. (R. 23, City Defs.' Mot. at 8.) ASA Weber separately argues that the state law claims raised against him must be dismissed because the exclusive jurisdiction for such claims is the Illinois Court of Claims. (R. 18, ASA Weber's Mem. at 11-14.) The Court addresses these arguments in turn.

The tort of intentional interference with a business relationship has the following four elements: (1) a reasonable expectation of continued employment; (2) knowledge of the business relationship by the defendant; (3) intentional interference; and (4) damages. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk and Western Ry.*, 748 N.E.2d 153, 161 (Ill. 2001);

---

[9] The final sentence of Paragraph 10 is not grammatical and appears to have some words missing: "Dart in his capacity as Cook County Sheriff existed as such under the laws of the State of Illinois, and the United States." (R. 1, Compl. ¶ 10).

*Marczak v. Drexel Nat. Bank*, 542 N.E.2d 787, 790 (Ill. App. Ct. 1989). The City Defendants

argue that Plaintiff's claim against Detective Dougherty fails on the first and third prongs. (R.

23, City Defs' Mot. at 8.) First, they argue that as a probationary employee, Plaintiff has failed to

allege a reasonable expectation of continued employment for purposes of this claim. (*Id.*) The

case they cite, however, pertains specifically to a probationary paramedic within the City fire

department whose employment was covered by a collective bargaining agreement; the Court

looked to the terms of that particular agreement and determined that the plaintiff had no

reasonable expectation of continued employment. *See Hughes v. City of Chicago*, No. 02-7267,

2003 WL 21518592 (N.D. Ill. Jul. 2, 2003). Here, the City Defendants do not point this Court to

any collective bargaining agreement, County ordinance, or state law governing the terms of

employment of probationary correctional officers at DOC. Further, Plaintiff specifically alleges

that she could only be terminated for cause. (R. 1, Compl. ¶ 13.)

Moreover, even assuming Plaintiff was an at-will employee, the mere fact that an

employment relationship is at-will does not preclude a claim for tortious interference. *See*

*Marczak*, 542 N.E.2d at 790. Illinois courts have permitted such claims to proceed, reasoning

that the tort should lie because the employment agreement would have continued in the absence

of the defendant's interference. *Id.*; *see also Kemper v. Worcester*, 435 N.E.2d 827 (Ill. App. Ct.

1982) (plaintiff had legitimate expectation in employment for purposes of tortious interference

claim, despite at-will nature of employment relationship). Accordingly, the Court concludes that

Plaintiff has adequately alleged a reasonable expectation of continued employment sufficient to

satisfy the first prong.

Second, the City Defendants argue that there are no allegations in the Complaint showing

16

that Detective Dougherty intentionally interfered with Plaintiff's employment. (R. 23, City Defs.' Mot. at 8.) This Court agrees. The Complaint alleges that Detective Dougherty and ASA Weber pressured Plaintiff to change her statement, and that when she refused ASA Weber filed a formal complaint against her, leading to her termination. (R. 1, Compl. ¶¶ 11-28.) There is nothing indicating that Detective Dougherty was involved in the filing of ASA Weber's complaint, or that he took other actions to purposefully interfere with Plaintiff's employment. Thus, Plaintiff has failed to state a claim against Detective Dougherty, and Count VI is dismissed with prejudice as to him. Because Detective Dougherty has been dismissed, the City of Chicago cannot be held liable based on his actions under a theory of *respondeat superior*. 745 ILCS 10/2-109. Accordingly, this claim is dismissed against the City as well.

ASA Weber argues that Count VI must be dismissed as to him because, under sovereign immunity principles, the exclusive jurisdiction for this claim is within the Illinois Court of Claims and this Court therefore lacks subject matter jurisdiction over this claim. (R. 18, ASA Weber's Mot. to Dismiss at 11-14.) State sovereign immunity rules apply to state law causes of action brought in federal court against state officials. *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003); *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). Under Illinois law, states' attorneys are considered state officials rather than county or local officials.[10] *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995); *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1272 (Ill. 1990). The Illinois State Lawsuit Immunity Act provides that the state cannot be sued unless one of a limited number of exceptions applies. 745 ILCS 5/1. One such exception is found in the

---

[10] Thus, to the extent Plaintiff is raising an indemnification claim against the County in Count VIII premised on the conduct of ASA Weber, this claim fails, since the County is not ASA Weber's employer. (*See* R. 1, Compl. ¶ 60.)

Illinois Court of Claims Act, which requires all claims against the state "sounding in tort" to be heard in the Illinois Court of Claims. 705 ILCS 505/8(d); *see also Jinkins v. Lee*, 807 N.E.2d 411, 417 (Ill. 2004) (discussing the constitutional and statutory framework for Illinois sovereign immunity). Thus, if the state law claims in this case are being brought against the state itself rather than against ASA Weber, they must be brought in the Illinois Court of Claims.

The determination of whether a state law claim is actually being brought against the state depends on the "issues raised" and the "relief sought," rather than on whether the defendant is being sued in an "official" capacity. *Fritz v. Johnston*, 807 N.E.2d 461, 466 (Ill. 2004). Thus, the fact that Plaintiff is suing ASA Weber in his "personal" capacity is not determinative. *Richman*, 270 F.3d at 441. Instead, courts employ a three-part test to determine whether the issues raised in a case implicate sovereign immunity. An action is considered to be only nominally against the employee, and in actuality against the state, if the following factors exist:

> (1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Jinkins*, 807 N.E.2d at 418. In evaluating the "relief sought" element, courts consider whether a judgment for the plaintiff "could operate to control the actions of the State or subject it to liability." *Id.*

Based on the allegations in the Complaint, it is apparent that the conduct Plaintiff complains of by ASA Weber---interviewing a witness in preparation for grand jury testimony and the filing of a complaint---occurred within the scope of his official duties as a prosecutor. *See*

18

*White v. City of Chicago*, 861 N.E.2d 1083, 1096 (Ill. App. Ct. 2006) (state's attorneys acting

within the scope of their employment in tort action involving alleged misconduct occurring

during investigation of criminal case); *Sneed v. Howell*, 716 N.E.2d 336, 341 (Ill. App. Ct. 1999)

(state's attorney acting within scope of his employment in tort case challenging his decision to

bring criminal charges and remove case to another county). There are no allegations that ASA

Weber breached a duty owed to the public independent of his state employment, and the

complained of actions involve matters within a state's attorney's normal functions. Thus, these

claims must be brought in the Illinois Court of Claims. Accordingly, the claims against ASA

Weber---Counts VI and VII---are dismissed without prejudice to their being raised in that

forum.[11]

## C.    Count VII

In Count VII, Plaintiff raises a claim for intentional infliction of emotional distress

("IIED") against all Defendants.[12] (R. 1, Compl. ¶ 56-57.) Setting forth similar arguments in

separate motions to dismiss, the City and County Defendants contend that Plaintiff has failed to

satisfy the three-prong test under Illinois law to support a claim for IIED. (R. 27, County Defs.'

Mem. at 8-13; R. 23, City Defs.' Mot. at 8-11.)

Under Illinois law, a plaintiff must allege three elements to bring a claim for IIED: (1) the

defendant's conduct was extreme and outrageous; (2) the defendant intended that his conduct

inflict severe emotional distress, or knew that there was at least a high probability that his

---

[11] Because of this holding, the Court does not reach ASA Weber's argument regarding
quasi-judicial immunity. (*See* R. 18, ASA Weber's Mem. at 8-11.)

[12] For the reasons discussed above, this claim has already been dismissed without
prejudice as to ASA Weber under sovereign immunity principles.

19

conduct would cause severe emotional distress; and (3) the conduct actually caused severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). It has long been held that this tort does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* In order to be considered extreme and outrageous, a defendant's conduct must "go beyond all possible bounds of decency" and must be "regarded as intolerable in a civilized community." *Id.* at 80-81. Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

The City and County Defendants separately argue that Plaintiff's claim falls short on all three prongs. (R. 27, County Defs.' Mem. at 8-11; R. 23, City Defs.' Mot. at 8-11.) This Court agrees. As to the first prong, Plaintiff alleges that Detective Dougherty harassed and attempted to intimidate her into changing her statement; demanded that she cooperate in the investigation; attempted to visit her job site; and served her with a subpoena at her home. The Court notes that some of this conduct occurred in the middle of the night, but Plaintiff worked the night shift (from 11:00 p.m. to 7:00 a.m.), and so contacting Plaintiff in the early morning hours could not be considered "extreme" or "outrageous" under these circumstances. Although Detective Dougherty's conduct might be considered rude, abrasive, or even improper, the Court cannot conclude that Detective Dougherty's actions taken in the course of the criminal investigation transgressed "all possible bounds of decency." *See Schiller v. Mitchell*, 828 N.E.2d 323, 334 (Ill. App. Ct. 2005) (nothing extreme or outrageous about actions of police in investigating, interrogating, and accusing plaintiffs of committing offenses). Indeed, Illinois courts have rejected IIED claims based on far more egregious conduct by police. *See Anderson v. Village of*

20

*Forest Park*, 606 N.E.2d 205 (Ill. App. Ct. 1992) (allegations that police officers entered bedroom of plaintiff, who had multiple sclerosis, interrogated her for several hours, refused to allow her to go to the bathroom, refused to allow her to change out of her nightgown, and forcibly removed her from her home when she was not resisting failed to state claim for IIED). Thus, Plaintiff has failed to allege extreme and outrageous conduct by Detective Dougherty.

As to Nolan and Sheriff Dart, Plaintiff does not allege that they coerced, intimidated, or threatened her in any way. Instead, Plaintiff alleges that they discharged her in reliance on ASA Weber's complaint charging her with making false statements and failing to cooperate in a criminal investigation---conduct that hardly transgresses societal boundaries of decency, given the legitimate interest of the DOC in preventing and remedying wrongdoing by correctional officers. *See Gibson v. Chem. Card Servs. Corp.*, 510 N.E.2d 37, 38 (Ill. App. Ct. 1987) (employer's conduct in accusing employee of criminal conduct, demanding confession, threatening her with prison time, and ultimately terminating her could not support IIED claim, given employer's legitimate interest in investigating and remedying employee wrongdoing); *see also Peart v. Mueller Streamline Co.*, No. 02-6153, 2004 WL 2381943, at *7 (N.D. Ill. Oct. 19, 2004) (cooperating with police investigation is legitimate employer objective that could not support IIED claim brought by employee under Illinois law).

As to the second prong, the Complaint does not allege that Defendants intended to cause Plaintiff severe emotional distress, or that they knew their actions would cause severe emotional distress, and instead alleges only generally that they engaged in extreme and outrageous behavior. (*See* R. 1, Compl. ¶¶ 55-58.) This is insufficient to satisfy the second element.

Third, the Complaint does not adequately allege that Plaintiff suffered the type of severe

21

emotional distress necessary to support an IIED claim. Courts have consistently held that "[a]lthough fright, horror, grief, shame, humiliation, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006). Rather, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Honaker*, 256 F.3d at 495. Here, the Complaint alleges that Plaintiff was "subjected to humiliation and indignities, and suffered mental, and emotional pain and suffering all to her damage in an amount to be ascertained at time of trial." (R. 1, Compl. ¶ 29.) Numerous courts have found such allegations insufficient to demonstrate the level of emotional distress necessary to support an IIED claim. *See, e.g., Karkomi v. American Airlines, Inc.*, 717 F. Supp. 1340, 1345 (N.D. Ill. 1989) (no claim for IIED where plaintiffs suffered public humiliation, embarrassment, and fear); *Johnson v. K Mart Corp.*, 723 N.E.2d 1192, 1198 (Ill. App. Ct. 2000) (feelings of stress and fear insufficient to support IIED claim); *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. Ct. 1999) (anxiety and humiliation not sufficiently severe to support IIED claim); *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 942 (Ill. App. Ct. 1997) (fear and embarrassment, causing plaintiff to cry, not severe emotional distress).

Plaintiff's Complaint contains no allegations of the type of severe emotional suffering, physical ramifications, medical treatment, or other factors that would point to severe emotional distress. *See, e.g., McGrath v. Fahey*, 533 N.E.2d 806, 808 (Ill. 1988) (where plaintiff experienced anxiety, became physically ill when discussing the situation and later suffered a heart attack, severe emotional distress shown); *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1252 (Ill. App. Ct. 1990) (severe distress shown where employer's threatening conduct required employee

to undergo psychotherapy for extended period, and employee was "scared, angry, and unable to cope with her child, her work and her relationship with men generally" as a result of defendant's actions). For these reasons, Plaintiff's IIED claim fails, and Count VII is therefore dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the motions to dismiss (R. 17, 23, 26) are granted in part and denied in part. The unnamed defendants are dismissed without prejudice pursuant to Rule 4(m); the claims against ASA Weber are dismissed without prejudice; Count II is dismissed with prejudice; Count IV is dismissed with prejudice; Count V is dismissed with prejudice as to Nolan and without prejudice as to Sheriff Dart; Count VI is dismissed with prejudice; and Count VII is dismissed with prejudice. The motions to dismiss are denied in all other respects. Plaintiff is granted twenty-one (21) days to file an amended complaint that comports with the terms of this opinion.

The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear on **October 15, 2008** at **9:45 a.m.** to set a firm litigation schedule for this case.

**Entered:**

**Judge Ruben Castillo**
**United States District Court**

**Dated: September 24, 2008**

23