## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SAMONE REDD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 343 |
| | ) | |
| Director of Personnel ROSEMARIE | ) | |
| NOLAN, Cook County Sheriff | ) | Magistrate Judge Morton Denlow |
| THOMAS DART, in his official capacity, | ) | |
| and COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Samone Redd ("Plaintiff") filed a second amended complaint against Defendants Director of Personnel Rosemarie Nolan ("Ms. Nolan"), Cook County Sheriff Thomas Dart, in his official capacity (the "Sheriff"), and Cook County ("Cook County") (collectively "Defendants"), alleging violations of Plaintiff's procedural due process rights and First Amendment rights under 42 U.S.C. § 1983, retaliatory discharge under Illinois law, and an indemnification claim against Cook County. The case is now before the Court on Defendants' motion for summary judgment attacking all of Plaintiff's claims. The Court heard oral argument on April 29, 2010 and permitted additional briefing thereafter. For the reasons below, Defendants' motion for summary judgment is granted.

# I. BACKGROUND FACTS

As required when considering a motion for summary judgment, the following facts are either uncontroverted or presented in the light most favorable to the plaintiff when controverted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## A.    Introduction

Plaintiff was 24 years old when she was hired as a probationary correctional officer for the Cook County Department of Corrections ("CCDOC") on November 13, 2006.  DS ¶3, PS ¶1.[1]  Her probationary period was to last for one year, ending on November 13, 2007.  DS ¶3.  Plaintiff  is alleged to have made a statement to Chicago Police Detective Brian Johnson ("Detective Johnson") in the course of a criminal investigation that Plaintiff denies making.  PS ¶2.  The alleged statement led to an investigation by the Office of Professional Review ("OPR") which resulted in Plaintiff's resignation from the CCDOC on October 31, 2007.  DS ¶31.

Plaintiff's Second Amended Complaint alleges four claims.  In Count I, Plaintiff alleges that Defendants terminated her employment without reasonable notice and without an opportunity to be heard, in violation of her procedural due process rights under 42 U.S.C. § 1983.  In Count II, Plaintiff alleges that Defendants retaliated against her for refusing to perjure herself in violation of her First Amendment rights.  In Count III, Plaintiff alleges that

---

[1]Citations to the record are in the following form: Defendants' Local Rule 56.1 Statement of Uncontested Material Facts is cited as "DS ¶__"; Plaintiff's Local Rule 56.1 Statement of Additional Facts is cited as "PS ¶__"; Plaintiff's Exhibit is cited as "PX_"; Defendants' Exhibit is cited as "DX_."

Defendants discharged her in retaliation for refusing to perjure herself, in violation of Illinois common law. In Count IV, Plaintiff seeks indemnification against the County of Cook for all compensatory damages entered against the individual Defendants acting within the scope of their authority.

**B.** **Conditions of Plaintiff's Employment**

Upon beginning a twelve-month probationary period of employment at the CCDOC, correctional officers are required to sign a Conditions of Employment form that states in relevant part: "I understand that during my first year as a Correctional Officer, I am on probation and can be terminated for cause." DS ¶33, PX D. The form also states: "I will abide by the Department's General Orders and Procedures." *Id.* Plaintiff signed the Conditions of Employment form on or about November 13, 2006. PS ¶4.

In addition, probationary correctional officers are given a copy of the CCDOC's General Orders. DS ¶¶4, 6. Plaintiff received a copy of the General Orders and was aware of her obligation to follow them. DS ¶4. CCDOC General Order 3.2A states, "All probationary employees (person employed by the Department less than 12 months) may be summarily terminated by the Sheriff or his designee." Pl. Dep. Ex. 3, p. A59. CCDOC General Order 3.5 states:

> Failure to meet minimum standards of performance may be basis for termination of a probationary employee at any time during the probationary period. If it becomes apparent that the probationary officer's conduct, character or standards of performance do not meet Sheriff's Office standards for satisfactory service, the probationary officer may be removed.

Pl. Dep. Ex. 4, p. A64.

General Order 4.1 details the policy and procedure for handling internal investigations at the CCDOC, encompassing complaints, investigations, and disciplinary actions. PS ¶5. Section (III), D, 2, (a) of that order describes the authority and responsibility of the Internal Investigations Division in handling complaints concerning correctional department officers, stating:

> Disciplinary action in connection with "sustained" complaints is initially recommended by the assigned Internal Investigations Investigator. The Chief Investigator will review the investigator's findings and recommendation(s) then submits the investigation for Command Channel Review. Command Channel Review consists of the Inspector General, Undersheriff, Executive Director, and in cases where there is recommendation for termination, the Sheriff.

PS ¶6; PX E, p. A227. Section (III), D, 2, (b) further states that "[t]he Internal Investigations Division shall: on receipt of an alleged violation/misconduct:..[m]ake an independent investigation of the complaint, primarily in cases of serious misconduct." PS ¶7; PX E, p. A232. Section (III), A details examples of serious misconduct such as: negligence leading to an escape or injury, embezzlement, breaking the law, destroying property, abuse, sleeping on duty, and excessive tardiness or absenteeism.. PS ¶8; PX E, p. A229-30. Less serious misconduct includes: failure to comply with uniform, excessive time

taken for lunch, tardiness, failure to perform assigned tasks, inattention to duty, misuse of

department vehicles, and use of loud and profane language. PS ¶9; PX E., p. A230.

## C.    Events Leading to Plaintiff's Resignation

On the evening of May 29, 2007, Plaintiff attended a barbecue where she witnessed

part of a verbal altercation between her friend, Tammie Watkins ("Watkins"), and Rafael

Taylor ("Taylor"). PS ¶19, DS ¶8. Watkins later accused Taylor of hitting her in the face

with a beer bottle. DS ¶8. While not a witness to the actual crime, Chicago Police

identified Plaintiff as a "circumstantial witness," believing Plaintiff's participation in the

investigation could help corroborate Watkins' claim that Taylor struck her. *Id.*

Thereafter, on the morning of May 30, 2007, Detective Brian Johnson ("Detective

Johnson") contacted Plaintiff regarding the incident. PS ¶20. Plaintiff agreed to speak with

Detective Johnson on June 7, 2007. Johnson Dep. p. 18, A139. Detective Johnson testified

that on June 7, 2007, Plaintiff told him that she met with Taylor after the incident and that

Taylor told Plaintiff he was sorry and he "didn't mean to do that to Tammie." DS ¶9. In

his report, dated May 30, 2007,[2] Detective Johnson wrote that "the following day Ralph told

Samone he didn't mean to do that to Tammie." PX F. Plaintiff alleges that the statement

in the report is false. PS ¶21. Plaintiff did not see or sign a statement. *Id.*

While Detective John Dougherty ("Detective Dougherty") and Detective Johnson

were looking for Taylor, Plaintiff rode with them to help find him and gave the police

---

[2]Detective Johnson testified that while his report was dated May 30, 2007, the report was actually completed after the June 7, 2007 interview with Plaintiff. PS ¶21.

detectives possible addresses and a license place number to locate him. PS ¶25. Detective

Johnson testified that Plaintiff was cooperative up to that point. *Id.*; Johnson Dep. p. 26.

Taylor was apprehended on July 4, 2007. PS ¶26. On July 5, 2007, the police

detectives asked Plaintiff to come to police headquarters to identify Taylor in a line-up. PS

¶26. Plaintiff informed the police detectives that she could not come down at that time. *Id.*

Thereafter, Plaintiff was subpoenaed to appear before a grand jury on July 6 and July 9,

2007. PS ¶27. Detective Dougherty and Assistant State's Attorney Kevin Nolan ("ASA

Nolan") also attempted to speak with Plaintiff at Cook County Jail, her place of

employment, on the night of July 5, 2007, but were not allowed to enter the jail. PS ¶28.

According to Plaintiff's supervisor at the time, Lieutenant George Norwood ("Lieutenant

Norwood"), External Operations and the Administrative Duty Officer determine who is

allowed to enter the jail, not Plaintiff. *Id.*

On the morning of July 6, 2007, Plaintiff called the phone number listed on the grand

jury subpoena because she was confused about the date on which to appear. PS ¶29. On

July 6, 2007, Plaintiff spoke with Assistant State's Attorney Adam Weber ("ASA Weber"),

who asked her when she would like to appear, and Plaintiff stated she would come right then

as she was already at work. *Id.* After speaking to Plaintiff at his office, ASA Weber

declined to put her on the witness stand. PS ¶30. Plaintiff again went to ASA Weber's

office in order to appear before the grand jury on July 9, 2007. PS ¶31. After speaking with

Plaintiff, ASA Weber again declined to put Plaintiff on the witness stand. *Id.* Thereafter,

OPR received a complaint from ASA Weber alleging that Plaintiff had purposely failed to cooperate in the criminal investigation of the alleged aggravated battery committed upon Tammie Watkins. DS ¶10.

## D. Sheriff's Investigation of Plaintiff

On August 14, 2007, OPR assigned Detective Servando Velez ("Detective Velez"), who was working with the Sheriff's Office of Professional Review ("OPR"), to conduct an administrative investigation of Plaintiff. DS ¶10.

In connection with his investigation of the Plaintiff, Velez interviewed ASAs Weber and Nolan, Detective Brian Johnson, and Plaintiff. DS ¶ 12. Detective Velez made certain findings pursuant to his investigation which he completed on October 4, 2007. DS ¶13. He sustained five charges against Plaintiff:

1) that she "failed to cooperate with Chicago Police Detectives and Assistant State's Attorneys investigating an Aggravated Battery on 06 July 2007" in violation of General Order 3.8 (III) B, 4. DS ¶ 14;

2) that she contradicted her prior statements to detectives and changed the facts after three interviews in violation of General Order 3.8 (III) B, 4. DS ¶ 15;

3) that she "provided contradictory statements to both Detectives and ASAs assigned to investigate an Aggravated Battery" in violation of General Order 3.8 (III) B, 6. DS ¶ 16;

4) that she "refused to speak with Det. Dougherty (sic) and ASA Nolan at Division VI and impeded their investigation" in violation of General Order 3.8 (III) B, 6. DS ¶ 17; and

5) that she "reported three hours late to a Grand Jury subpoena

after being given appropriate notice and proceeded to give conflicting statements" in violation of General Order 3.8 (III) B, 6. DS ¶ 18.

CCDOC General Order 3.8 (III) B, 4 provides that "[e]mployees will respect and protect the right of the public to be safeguarded from criminal activity." CCDOC General Order 3.8 (III) B, 6 provides that "[e]mployees will respect the importance of agencies within the criminal justice system and work to improve coordination with each segment."

In conducting his investigation, Detective Velez did not request the police detectives' reports or progress notes. PS ¶33. He also did not interview External Operations or Plaintiff's superior at the Cook County Jail regarding the refusal to admit Detective Dougherty and ASA Nolan into the jail. PS ¶35. Detective Velez did not interview Superintendent Anderson regarding the events that occurred during the grand jury hearings. PS ¶36. When asked in his deposition whether Detective Velez believed the information provided to him by the police detectives was accurate, he responded, "I believe a police officer is going to be truthful in his statement." Velez Dep. p 84. He also stated that he "[a]bsolutely" believed that the Assistant State's Attorneys were being truthful to him. *Id.*

Detective Johnson testified at his deposition that he told Detective Velez that due to Plaintiff's failure to meet with the police detectives and the ASAs, the decision was made to subpoena her to testify before the grand jury. DS ¶23. He also testified that he told Detective Velez that because of Plaintiff's inconsistent statements, ASA Weber made the decision not to put Plaintiff in front of the grand jury. DS ¶24. Additionally, he told

Detective Velez that once Taylor was placed into custody, Plaintiff became "difficult" and did not want to talk to the State's Attorney or cooperate with the investigation. DS ¶21. He also told Detective Velez that detectives contacted Plaintiff after Taylor was arrested, and she refused to come down to headquarters to view a line-up because she had spoken with her supervisor who told her that she did not need to become involved, nor did she herself want to be involved. DS ¶22.

Detective Velez testified that during his interview with Plaintiff, she denied that Taylor admitted to her that he hit Watkins, and stated that she had talked to Sherice (Taylor's girlfriend) instead. DS ¶20. In addition, Plaintiff told Detective Velez that she was unable to come to police headquarters on July 5, 2007 to view a line-up because her child was at home sleeping. PS ¶34.

After completion of the investigation, Assistant Executive Director of the Office of Professional Review, Henry Barsch ("Mr. Barsch"), recommended that Plaintiff be separated from her employment. DS ¶25.

## E.    Director of Personnel, Rosemarie Nolan

On October 31, 2007, Plaintiff met with Ms. Nolan, Director of Personnel of the Sheriff's Department. PS ¶38. Ms. Nolan related the charges against Plaintiff and the General Orders she was found to have violated. *Id.* Ms. Nolan informed Plaintiff that if she did not resign, she would be discharged, and the reason cited would be "misconduct." *Id.* Plaintiff chose to resign on October 31, 2007. DS ¶31.

Thereafter, on November 6, 2007, the Executive Director of OPR concurred with OPR's findings and recommendation of termination. PS ¶39. On November 9, 2007, another Executive Director concurred with OPR's findings and recommendation of termination. *Id.* On November 16, 2007, the Undersheriff concurred with OPR's findings and recommendation of termination. *Id.* On November 21, 2007, the Sheriff concurred with OPR's findings and recommendation of termination and ordered OPR to initiate the Merit Board Process for Plaintiff. *Id.*

Ms. Nolan testified regarding the procedure for termination of a probationary correctional officer pursuant to General Order 4.1. After an OPR investigator completes his investigation, he makes recommendations regarding discipline or termination. PS ¶17. This recommendation is then reviewed by the chain of command, which includes the Executive Director of OPR, the Undersheriff, and the Sheriff. *Id.* Ms. Nolan testified that she then reviews the investigation file to determine what General Orders have been violated, whether the charges have been sustained, and whether command channel review has concurred with OPR's recommendation. PS ¶19; DS ¶27. She then contacts the employee and conducts an exit interview during which she discusses the investigative findings and explains the recommendations. DS ¶27. Finally, Ms. Nolan has the employee fill out necessary paperwork and informs the employee of available benefits after discharge. *Id.* Ms. Nolan testified that she lacks the authority to disagree with or reverse a discharge decision. DS ¶28.

Ms. Nolan testified that probationary employees are not entitled to a *Loudermill* hearing[3] or any sort of appeal. DS ¶29. She also testified that probationary employees may only be terminated for "just cause" and the Sheriff may terminate a probationary employee if there is a "reason for discharge." PS ¶13.

## II. LEGAL STANDARD

A court may grant summary judgment when the "pleadings, the discovery, and discovery materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). The evidence is viewed in the light most favorable to

---

[3] A *Loudermill* hearing occurs only for non-probationary employees. Nolan Dep. p. 28. Where it is recommended that the employee receive a suspension or termination, the employee will go before a Loudermill Hearing Board where the employee will have the opportunity to present evidence of his or her behalf, call witnesses, or submit documents. PX E, p. A 298. The Hearing Board will determine whether there is sufficient grounds for suspension or termination of the employee. *Id.*

the non-movant, with all justifiable inferences drawn in his favor. *Anderson*, 477 U.S. at

255. Summary judgment is inappropriate when alternate inferences can be drawn from the

evidence, as the choice between reasonable inferences is a jury function. *Id.; Spiegla v.*

*Hall*, 371 F.3d 928, 935 (7th Cir. 2004).

## III. DISCUSSION

Defendants' summary judgment motion raises the following three dispositive issues:

1) whether Plaintiff had a property interest in her employment at the time she

resigned;

2) whether Plaintiff's First Amendment retaliatory discharge claim raises a fact

question; and

3) whether Plaintiff's state law retaliatory discharge claim raises a fact question.

## A. Plaintiff Had No Property Interest In Her Employment Because She Was a Probationary Employee When Her Employment Terminated.

To prove a violation under 42 U.S.C. § 1983, Plaintiff must show that Defendants

deprived her of a right secured by the Constitution or laws of the United States, and that

Defendants acted under color of state law. *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir.

2005). Therefore, the initial determination is whether Defendants deprived Plaintiff of a

constitutional right.

In order to show that Plaintiff has been deprived of procedural due process, she must

establish that she has: 1) a protected property interest in her employment, and 2) that she

was deprived of her interest in that employment without due process. *Salas v. Wis. Dep't*

*of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007). If no property interest is established, then the Court need not go on to the due process analysis. *See Covell v. Menkis*, 595 F.3d 673, 676-77 (7th Cir. 2010).

A protected interest in continued employment arises only when "there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." *Covell*, 595 F.3d at 675. The right can arise from a statute, regulation, municipal ordinance, or an express or implied contract, such as rules or understandings that secure benefits. *Id.* State law defines the property interest, and federal law defines the process that is due. *Kodish v. Oakbrook Terrace Fire Protection District*, 604 F.3d 490, 494 (7th Cir. 2010). The Court therefore turns initially to Illinois law to determine whether Plaintiff had a property interest in her employment with the CCDOC.

Section 3-7008 of the Illinois Counties Code applies to employees of the Cook County Sheriff's Department. 55 Ill. Comp. Stat. Ann. § 5/3-7008 (West 2007). It states in relevant part: "All appointees shall serve a probationary period of 12 months and during that period may be discharged at the will of the Sheriff." *Id.* The language of the Code clearly indicates that Plaintiff lacks a protected property interest in her employment for the first year because the Sheriff's Department is free to terminate her with or without cause. *See Common v. Williams*, 859 F.2d 467, 470-71 (7th Cir. 1988) (interpreting the previously codified version of Section 5/3-7000, Ill. Rev. Stat. Ch. 125, paras. 58 and 160 (1987), as "clearly dictat[ing]" that a probationary corrections officer with the CCDOC did not have

a "protected 'property' interest in continued employment"); *Ellis v. Sheahan*, 2004 U.S. Dist. LEXIS 21346, at *5-6 (N.D. Ill. Oct. 21, 2004) (property interest arises only after the probationary year). Thus, Plaintiff did not have a protected property interest in her employment provided by a state law or ordinance.

In addition to the statute, the Sheriff issued General Order 3.2A, which provides: "All probationary employees (person employed by the Department less than 12 months) may be summarily terminated by the Sheriff or his designee." Plaintiff received a copy of this order upon commencing employment. This General Order is consistent with the state statute.

Plaintiff argues that her "conditions of employment" form and the policy and termination procedures detailed in General Order 4.1 are clear statements implying that Plaintiff had a protected property interest in her employment. The "conditions of employment" form states that "I am on probation and can be terminated for cause." The form also states: "I will abide by the Department's General Orders and Procedures."

As an initial matter, the language "can be terminated for cause" appears, on its face, to be suggestive rather than mandatory. In *Boulay v. Impell Corporation*, the court held that language in a plaintiff's employee manual that a probationary employee "may be terminated" during his or her probationary period "neither guarantees progressive discipline nor requires 'just cause' as a basis for dismissal." 939 F.2d 480, 482 (7th Cir. 1991). Therefore, the former employee could not establish a promise to use specific disciplinary procedures prior to termination. *Id.* Similarly, in *Lashbrook v. Oerkfitz*, the court held that

14

the plaintiff could not reasonably believe that the statement "Department Heads, with the approval of the Director, may dismiss any employee for just cause," to mean that he could *only* be terminated for cause. 65 F.3d 1339, 1347 (7th Cir. 1995) (emphasis added); *contra Lewis v. Hayes*, 505 N.E.2d 408, 411 (Ill. App. Ct. 1987) ("with cause" language altered probationary status of employee because court found it "meaningless" language otherwise).

Furthermore, the language in General Order 4.1 providing an investigation procedure for disciplinary procedures does not give rise to the expectation of a property right. The Seventh Circuit recently confirmed that "[p]rocedral guarantees, whether relied on or not, do not establish a property interest protected under the Fourteenth Amendment's Due Process Clause." *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). Thus, the existence of termination procedures within the CCDOC is not enough to establish a property interest in employment.

Even assuming, *arguendo*, that the language in the "conditions of employment" form and General Order 4.1 alone could be construed as creating contractual employment, to the extent they contradict Illinois law and the CCDOC's own policies they cannot be relied upon to create a property interest. *See Kodish*, 604 F.3d at 500, n. 8. The state statute specifically provides that probationary officers "may be discharged at the will of the Sheriff." 55 Ill. Comp. Stat. Ann. § 5/3-7008 (West 2007). Furthermore, General Order 3.2A states: [a]ll probationary employees (persons employed by the Department less than 12 months) may be summarily terminated by the sheriff or his designee." The CCDOC's

employment form and internal procedures cannot be read to alter the plain language of the statute, which General Order 3.2A mirrors.

Therefore, Plaintiff could not have had a legitimate expectation of a property interest in her employment with the CCDOC until her twelve-month probationary period ended in November of 2007. Since Plaintiff resigned on October 31, 2007, before her probationary period ended, she had no property interest at that time, and summary judgment is warranted on Count I of Plaintiff's Second Amended Complaint.

## B.    Plaintiff Fails To Establish A *Prima Facie* Case Of First Amendment Retaliatory Discharge.

Plaintiff alleges that she was discharged in retaliation for refusing to commit perjury in violation of her First Amendment rights after she refused to testify before the grand jury at the request of ASA Weber. In order to establish a *prima facie* case of First Amendment retaliation, an employee must show that: 1) the employee's speech was constitutionally protected, 2) the employee has suffered a deprivation likely to deter free speech, and 3) the employee's speech was the "but for" cause of the employer's action. *Kodish*, 604 F.3d at 501. The parties appear to concede the first two elements could be established as neither has addressed them in their briefs, and, therefore, the Court will only address the third element.

The third element of First Amendment retaliation is causation. Plaintiff must show a causal link between the protected act and the alleged retaliation, and it must furthermore be the "but-for" motivating factor in an employer's action. *Fairley v. Andrews*, 578 F.3d

518, 525-26 (7th Cir. 2009). If an employer offers a "legitimate, nondiscriminatory reason for the discharge, the employee must show that reason is pretextual." *Bannon v. University of Chicago*, 503 F.3d 623, 631 (7th Cir. 2007). Thus, Plaintiff must prove that but for her refusal to testify before the grand jury as ASA Weber requested, she would not have been asked to resign and subsequently terminated.

As an initial matter, the Court notes that no evidence shows that the named Defendants, Ms. Nolan and Dart, sought to terminate Plaintiff based on a retaliatory motive. In fact, Ms. Nolan testified that she does not have the authority to make decisions to terminate employees. Dart's decision to affirm the recommendation to terminate Plaintiff was based on the internal investigation finding Plaintiff had violated certain standards of conduct, and nothing in the record indicates a retaliatory motive on his part.

However, as Plaintiff points out, when the actions of a decisionmaker can be imputed to a subordinate employee who held significant influence over him, then the retaliatory motives of the subordinate may be examined. *Kodish*, 604 F.3d at 508. This is appropriate when the subordinate employee "possesses so much influence and power over the nominal decision maker that the employee, for all intents and purposes is in fact, the true functional decision maker." *Id.* Here, Plaintiff contends the functional decisionmaker was Detective Velez and the OPR, upon whose investigation Dart relied without conducting his own independent investigation. Thus, if any evidence could reasonably lead a jury to determine Detective Velez had a retaliatory motive that caused him to sustain false charges that led to

her termination, it is possible she could establish a *prima facie* case for this count.

The Court need not conclusively determine whether Detective Velez's actions can be imputed to Dart, because even assuming Velez was the functional decisionmaker, no evidence indicates he had a retaliatory motive against Plaintiff. The undisputed evidence establishes that Plaintiff was discharged, not because she refused to perjure herself, but because she was found to have violated the standard of conduct required of all Sheriff's Department probationary employees. General Order 3.5 states that "[f]ailure to meet minimum standards of performance may be basis for termination of a probationary employee at any time during the probationary period." DS ¶6. The order also states that "[i]f it becomes apparent that the probationary officer's conduct, character or standards of performance do not meet Sheriff's Office standards for satisfactory service, the probationary officer may be removed." *Id.* General Order 3.8 lists general standards of conduct that must be followed including "[e]mployees will respect the importance of agencies within the criminal justice systems and work to improve cooperation with each segment" and "[e]mployees will respect and protect the right of the public to be safeguarded from criminal activity."

Detective Velez, following his internal investigation, concluded that Plaintiff had violated the above standards of conduct. Detective Velez based his findings on interviews with Detective Johnson, ASA Weber, ASA Nolan, and Plaintiff. DS ¶12. Detective Velez testified that in conducting his investigation he believed that the information provided to

him by the police detectives and ASA's was truthful and accurate. DS ¶19. There is no evidence in the record to indicate that the allegations against Plaintiff, and thus the findings and recommendations made by Detective Velez, were based on a retaliatory animus rather than because she was found to have violated the Department's standards of conduct.

Nor can Plaintiff establish that the stated reasons were pretextual and that the real reason for Plaintiff's termination was retaliatory animus. Pretext includes "more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for doing some action." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838-39 (7th Cir. 2009). If an employer honestly believes the reason it proffers for its decision to terminate an employee, the reason is not pretextual. *Id.* at 839. Here, even if a jury found Detective Velez's investigation to be less than comprehensive, it could not reasonably find that he sought to make false findings that could lead to Plaintiff's termination solely due to her refusal to testify in front of the grand jury.

Plaintiff correctly points out that in summary judgment review, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000). However, where as here, Plaintiff fails to offer any evidence to support the allegations of Defendants' retaliatory motives, no reasonable jury could find "but-for" causation. Therefore, Defendants are entitled to summary judgment on Count II of Plaintiff's Second Amended Complaint.

## C.  Plaintiff Fails To Establish A *Prima Facie* Case For The Tort of Retaliatory Discharge.

When all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). However, the Seventh Circuit has recognized that "when it is absolutely clear how the pendent claims will be decided," the district court may decide such a claim on the merits. *Id.* Having granted summary judgment on all federal claims, the Court nevertheless will consider Plaintiff's claim of retaliatory discharge on the merits because it is absolutely clear how this claim will be decided.

The tort of retaliatory discharge is a narrow exception to the rule that an employer may fire an at-will employee for any or no reason. *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009). To establish a claim of retaliatory discharge, an employee must establish that she was 1) discharged, 2) in retaliation for her activities, and 3) the discharge violates a clear mandate of public policy. *Id.* As to the third element, if Plaintiff was terminated for refusing to commit perjury, this would be a clear violation of public policy. Illinois law provides that the commission of perjury is a criminal violation punishable as a Class 3 felony. 720 Ill. Comp. Stat. Ann. § 5/32-2(d) (West 2007). The Illinois Supreme Court held that actions for retaliatory discharge are recognized where the employee was discharged for refusing to violate this statute. *Blount*, 904 N.E.2d at 9.

However, Plaintiff fails to provide any evidence upon which a jury could reasonably conclude that she was asked to resign in retaliation for refusing to commit perjury before

the grand jury. Defendants had a legitimate, non-retaliatory basis for terminating Plaintiff's probationary employment, as discussed above, and Plaintiff fails to provide any evidence which would support a conclusion that the decision was made for any other reason. Therefore, having failed to establish a *prima facie* case for the civil tort of retaliatory discharge, Defendants are entitled to summary judgment on Count III of Plaintiff's Second Amended Complaint.

Since Defendants are entitled to summary judgment on Counts I-III, Count IV against Cook County for indemnification is moot.

## IV. CONCLUSION

For the reasons set forth in this opinion, Defendants' motion for summary judgment is granted on all counts.

SO ORDERED THIS 15TH DAY OF JUNE, 2010.

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Edward M. Fox
Julie M. Owen
Ed Fox & Associates
300 West Adams Street
Suite 330
Chicago, Illinois 60606

Counsel for Plaintiff

Arleen C. Anderson
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602

Counsel for Defendant